UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 11** |
| | ) | **Case No. 17-18799** |
| **PREMSAGAR MULKANOOR,** | ) | |
| | ) | **Hon. Jack B. Schmetterer** |
| Debtor. | ) | **Room 682** |
| _____ | ) | |
| **PREMSAGAR MULKANOOR,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adversary Proceeding No. 17-00349** |
| | ) | |
| **AMERICAN HOME MORTGAGE** | ) | |
| **CORP. d/b/a HLB MORTGAGE, and** | ) | |
| **OCWEN LOAN SERVICES, LLC** | ) | **Hearing Date: October 12, 2017** |
| | ) | **Hearing Time: 10:00 a.m.** |
| Defendants. | ) | |

**~~PROPOSED~~ FINDINGS OF FACT AND CONCLUSIONS OF LAW**

NOW COMES, Debtor/Plaintiff, Premsagar Mulkanoor ("Plaintiff"), by his attorneys, Ariel Weissberg and Devvrat Sinha, and as his ~~Proposed~~ Findings of Fact and Conclusions of Law, states as follows:

**FINDINGS OF FACT**

1.      On or about December 10, 2001, DeBello Builders, Inc. conveyed to Debtor and Vijayageetha Mulkanoor ("Mrs. Mulkanoor"), Debtor's wife, not in tenancy in common but in joint tenancy, fee simple interest in residential real estate bearing the Permanent Index Number of 09-19-305-010 and commonly known as 21405 Saddle Lane, Mokena, Illinois 60448 ("Property"), by a Warranty Deed, a copy of which is attached hereto as **Exhibit 1**.

2.      On or about January 24, 2005, Mrs. Mulkanoor borrowed $945,000.000 from American Home Mortgage Corp. d/b/a HLB Mortgage ("HLB") (the "Loan"). The Loan was evidenced by a promissory note executed by Mrs. Mulkanoor, dated January 24, 2005, in the principal amount of $945,000.000 (the "Note"). A copy of the Note is attached to the Complaint as **Exhibit 2**.

3.      Contemporaneously with the execution of the Note, Mrs. Mulkanoor executed a mortgage to secure the indebtedness under the terms of the Note. This mortgage was recorded with the Will County Recorder of Deeds on February 3, 2005 as Document Number R2005020487 ("Mortgage"). A copy of the Mortgage is attached to the Complaint as **Exhibit 3**.

4.      Plaintiff never executed the HLB mortgage, nor any other mortgage, to secure the indebtedness under the terms of the Note, which was only signed by Mrs. Mulkanoor.

5.      HLB filed a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the District of Delaware as Case No. 07-11047 (CSS), and that the Debtor confirmed a Chapter 11 Plan of Liquidation on February 18, 2009 (Delaware Case Docket No. 7031).

6.      On July 26, 2013, Mrs. Mulkanoor died of natural causes. A Death Certificate issued by the Will County Registrar is attached hereto as **Exhibit 4**.

7.      The liquidating trustee for HLB has not received any distributions from Ocwen from this underlying mortgage. See Affidavit of Devvrat Sinha, attached hereto as **Exhibit 5.**

8.      On or about August, 2013, Debtor sent a copy of Mrs. Mulkanoor's death certificate to HLB Mortgage, through the loan-servicer, Ocwen, by which the Debtor informed Ocwen and HLB Mortgage them that Mrs. Mulkanoor had passed away.

9.     Despite having knowledge of Mrs. Mulkanoor's death, Ocwen continued to send mortgage statements to the Property addressed to the "Estate of Vijayageetha Mulkanoor" and demanded payment by the first of every month after which late fees and penalties would accrue.

10.     Based on these "mortgage statements," the Debtor remitted forty six monthly payments of $10,038.77 per month from August 1, 2013 through June 1, 2017 for a total amount of $461,783.27, not including any accruing interest.

## CONCLUSIONS OF LAW

11.     At the time HLB executed the Mortgage with Mrs. Mulkanoor, as the sole borrower, it knew or should have known by virtue of the Warranty Deed that both Debtor and Mrs. Mulkanoor had an interest in the Property.

12.     Upon the death of Mrs. Mulkanoor, the Debtor, through his right of survivorship arising from the conveyance of the Property to him and Mrs. Mulkanoor in joint tenancy, acquired the Property in its entirety.  See Warranty Deed recorded October 10, 2001 (Exhibit 1).  *Harms v. Sprague*, 105 Ill. 2d. 215 (Ill. 1984) (mortgage executed by deceased "does not survive as a lien on plaintiff's property.")

13.     In *Harms v. Sprague,* the Supreme Court of Illinois stated that a mortgage solely executed by a joint tenant who then passes away is void as to the surviving joint tenant.

14.     There was no contract, promissory note, or written instrument under which the Debtor had a financial obligation with Ocwen.

15.     By accepting the payments from the Debtor after July 26, 2013, Ocwen has unjustly retained a benefit to the Debtor's detriment, and their retention of the sum of $461,783.27 violates the fundamental principles of justice, equity, and good conscience.

16.     Following the death of Mrs. Mulkanoor, Ocwen had no recourse with respect to the Property and had no rights of payment from the Debtor.

17.     Ocwen unjustly benefited by receiving forty six monthly payments from the Debtor on a Note for which he bore no responsibility for payment.

18.     Moreover, Ocwen failed to remit these payments to the liquidating trustee for HLB.

19.     Accordingly, Ocwen has unjustly retained a benefit to the Debtor's detriment the sum of $461,783.27 which violates the fundamental principles of justice, equity, and good conscience. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (unjust enrichment occurs under Illinois law where "the defendant has unjustly retained a benefit to the plaintiff's detriment, and the Defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."

Dated:    **1 2 OCT 2017**

ENTER:

Hon. Jack B. Schmetterer
U.S. Bankruptcy Judge

**Prepared By:**

Ariel Weissberg, Esq. (No. 03125591)
Devvrat Sinha, Esq. (No. 6314007)
Weissberg and Associates, Ltd.
401 S. LaSalle St., Suite 403
Chicago, IL 60605
T. 312-663-0004
Emails: ariel@weissberglaw.com; dev@weissberglaw.com

# EXHIBIT 1

## CORPORATE WARRANTY DEED

**THE GRANTOR, DeBELLO BUILDERS, INC.** an Illinois Corporation, having its principal office in the County of Will, State of Illinois, for and in consideration of TEN AND NO/100 ($10.00) DOLLARS, and other good & valuable consideration in hand paid, and pursuant to authority given by the Board of Directors of said corporation,

```
MARY ANN STUKEL                    2P
        Will County Recorder
           Will County
R 2001171813              Page 1 of 2
KLH Date 12/12/2001   Time 09:36:08
    Recording Fees:          18.00
```

CONVEYS and WARRANTS to **PREM SAGAR MULKANOOR and VIJAYA-GEETHA MULKANOOR, of the County of cOOK, State of Indiana, Illinois** not in Tenancy in Common, but in Joint Tenancy, all interest in the following described Real Estate situated in the County of COOK, in the State of Illinois, to wit:

> LOT 18 IN COUNTRY POND ESTATES PHASE 2, A SUBDIVISION OF PART OF THE EAST ½ OF THE WEST ½ OF SECTION 18, TOWNSHIP 35 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JULY 20, 1998 AS DOCUMENT NO R98-82624, IN WILL COUNTY, ILLINOIS.

Subject to covenants, conditions, restrictions, easements of record and general taxes for the year 2001 and subsequent years, hereby releasing and waiving all rights under and by virtue of the Homestead Exemption Laws of the State of Illinois. TO HAVE AND TO HOLD said premises forever.

Permanent Real Estate Index Number(s):  09-19-305-010

Address of Real Estate:  21405 Saddle Lane, Mokena, IL  60448

GREATER ILLINOIS TITLE CO
300 East Roosevelt Road    DATED this _10th_ day of December, 2001.
Wheaton, Illinois 60187
DeBello Builders, Inc.

By: _Nick DoBello_ (Seal)     _____
    Nick DeBello, President

This instrument was prepared by:  Richard Burke, 14535 John Humphrey Drive, Orland Park, IL 60462

Grantee's address: 831 HAMLIN Ave Flossmoor, IL

| Mail To: | Send Subsequent Tax Bills to: |
|---|---|
| Gintaras P. Cepenas | M/M Prem Sagar Mulkanoor |
| 6436 S. Pulaski Rd. | 21405 Saddle Lane |
| Chicago, IL  60629 | Mokena, IL 60448 |

1 0 6 2

STATE OF ILLINOIS )
                  ) SS
COUNTY OF COOK )

    THE UNDERSIGNED, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that **Nick DeBello, President of DeBello Builders, Inc.** an Illinois corporation, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act, for the uses and purposes therein set forth.  GIVEN under my hand and official seal, this _10th_ day of December, 2001.

_____
Notary Public

c:\wp51\real\War.Deed –Corp.DeBello-Mulkanoor

```
"OFFICIAL SEAL"
LINDA M. PERAZZOLO
Notary Public, State of Illinois
My Commission Expires 02/26/05
```



STATE & COUNTY TAX   $5,000.00

STATE OF ILLINOIS
DEC. 12. 01
WILL COUNTY

REAL ESTATE TRANSFER TAX
0014250
FP326655
000002840

2

# EXHIBIT 2

NOTE / NOTE

# NOTE

January 24, 2005                     NAPERVILEE                  
[Date]                                    [City]

21405 Saddle Lane, Mokena, IL   60448
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.$ 945,000.00    (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is HLB Mortgage

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate
of        5.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of
this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st    day of each month beginning on   March 1, 2005    . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before
Principal. If, on   February 1, 2020    , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at   Att: Payment Processing, Mail Stop D1-11, P.O. Box
3050, Columbia, MD  21045-6050            or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S.$ 7,910.77          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to
the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the
Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the
Note Holder agrees in writing to those changes.

DOC #:316691                       APPL #:0000743225
MULTISTATE FIXED RATE NOTE -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

UM31 C005
-5N (0005)     Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3             Initials: V.M

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected,or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER´S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          5.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder´s Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Vijaya Geetha Mulkanoor        -Borrower                                               -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                               -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                               -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                               -Borrower

*[Sign Original Only]*

DOC #:316693                     APPL #:0000743225
-5N (0005)                          Page 3 of 3                          Form 3200 1/01

# EXHIBIT 3

Return To:
HLB Mortgage
520 Broadhollow Road
Melville, NY
11747

Prepared By:
Andrea Memenga
1245 E. Diehl Road
Suite 305
Naperville, IL
60563

LAURIE MCPHILLIPS 15P R 2005020487
Will County Recorder    Page 1 of 15

CAH Date 02/03/2005    Time 09:43:54
Recording Fees:    29.00

[Space Above This Line For Recording Data]

## MORTGAGE

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated January 24, 2005 together with all Riders to this document.
(B) "Borrower" is Vijaya Geetha Mulkanoor

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is HLB Mortgage

Lender is a Corporation
organized and existing under the laws of State of New York

DOC  #:317181          APPL #:0000743225
**ILLINOIS** - Single  Family - **Fannie  Mae/Freddie  Mac UNIFORM INSTRUMENT**          Form 3014 1/01

(VMP) -6(IL) (0010)      UM31 3010
Page 1 of 15          Initials:
VMP MORTGAGE FORMS - (800)521-7291



Case 17-00349   Doc 34   Filed 10/12/17   Entered 10/13/17 10:10:59   Desc Main
Document   Page 14 of 34   R2005020487_2

17-00349:30.3:Proposed Findings of Fact and Conclusions of Law:Exhibit Entered: 10/2/2017 5:44:14 PM by:Ariel Weissberg Page 3 of 16

Lender's address is  520 Broadhollow Road, Melville, NY  11747

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated  January 24, 2005
The Note states that Borrower owes Lender Nine Hundred Forty Five Thousand and
No/100                                                                                          Dollars
(U.S. $945,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than   February 1, 2020

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.

DOC  #:317182                   APPL #:0000743225

VMP -6(IL) (0010)                              Page 2 of 15            Initials:              Form 3014  1/01

V·M

(P) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following described property located in the County                                                              [Type of Recording Jurisdiction]
of  Will                                     [Name of Recording Jurisdiction]:
LOT 18 IN COUNTRY POND ESTATES PHASE 2, A SUBDIVISION OF PART OF THE
EAST 1/2 OF THE WEST 1/2 OF SECTION 18, TOWNSHIP 35 NORTH, RANGE 12,
EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF
RECORDED JULY 20, 1998 AS DOCUMENT NO. R98-82624, IN WILL COUNTY,
ILLINOIS

Parcel ID Number: 09-19-305-010-0000                              which currently has the address of
21405 Saddle Lane                                                                              [Street]
Mokena                                                   [City], Illinois  60448         [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

DOC #:317183                        APPL #:0000743225

VMP®-6(IL) (0010)                        Page 3 of 15              Initials: [initials]                    Form 3014  1/01

V. M

3

Case 17-00349   Doc 34   Filed 10/12/17   Entered 10/13/17 10:10:59   Desc Main
Document      Page 16 of 34        R2005020487_ 4

17-00349:30.3:Proposed Findings of Fact and Conclusions of Law:Exhibit Entered: 10/2/2017 5:44:14 PM by:Ariel Weissberg Page 5 of 16

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower

DOC #:317184                      APPL #:0000743225

⬧-6(IL) (0010)                          Page 4 of 15                    Initials: _M.M_                Form 3014  1/01

V. M

shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

DOC #:317185                    APPL #:0000743225

VMP -6(IL) (0010)                    Page 5 of 15                    Initials: [handwritten]                    Form 3014  1/01

5                    V . M

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the

DOC  #:317186                    APPL #:0000743225

VMP®-6(IL) (0010)                Page 6 of 15          Initials:               Form 3014  1/01

V. M

6

excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

DOC #:317187
APPL #:0C00743225
VMP -6(IL) (0010)
Initials:
Page 7 of 15
Form 3014 1/01

V. M

7

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage

DOC  #:317188                    APPL #:0000743225

VMP -6(IL) (0010)                    Page 9 of 15                    Initials: __                    Form 3014  1/01

8

V. M

Case 17-00349   Doc 34   Filed 10/12/17   Entered 10/13/17 10:10:59   Desc Main
Document    Page 21 of 34
R2005020487_ 9

17-00349:30.3:Proposed Findings of Fact and Conclusions of Law:Exhibit Entered: 10/2/2017 5:44:14 PM by:Ariel Weissberg Page 10 of 16

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

DOC #:317189                     APPL #:0000743225

-6(IL) (0010)                    Page 9 of 15                    Initials: _____        Form 3014   1/01

V. M

9

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments form third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall

DOC #:317190                    APPL #:0000743225

VMP®-6(IL) (0010)                   Page 10 of 15                    Initials: _____              Form 3014  1/01

V. M

/0

not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower´s Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower´s Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a

notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DOC  #:317192                    APPL #:0000743225

VMP®-6(IL) (0010)                  Page 13 of 15      Initials:         Form 3014  1/01

                                                      V. M

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

**25. Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

DOC  #:317193                APPL #:0000743225

VMP -6(IL) (0010)                Page 13 of 15          Initials: [signature]                Form 3014  1/01

V. M

/3

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                            Vijaya Geetha Mulkanoor        -Borrower


_____          _____ (Seal)
                                                                          -Borrower


_____ (Seal)           _____ (Seal)
                          -Borrower                                       -Borrower


_____ (Seal)           _____ (Seal)
                          -Borrower                                       -Borrower


_____ (Seal)           _____ (Seal)
                          -Borrower                                       -Borrower


DOC  #:317194                   APPL #:0000743225

VMP®-6(IL) (0010)                      Page 14 of 15                Form 3014  1/01

*14*

Case 17-00349    Doc 34    Filed 10/12/17    Entered 10/13/17 10:10:59    Desc Main
Document        Page 27 of 34        R2005020487_ 15

17-00349:30.3:Proposed Findings of Fact and Conclusions of Law:Exhibit Entered: 10/2/2017 5:44:14 PM by:Ariel Weissberg Page 16 of 16

STATE OF ILLINOIS,          DUPAGE                                                    County ss:
I,                                            , a Notary Public in and for said county and
state do hereby certify that   Vijaya Geetha Mulkanoor


personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument,
appeared before me this day in person, and acknowledged that he/she/they signed and delivered the said
instrument as his/her/their free and voluntary act, for the uses and purposes therein set forth.
    Given under my hand and official seal, this     24th       day of    January, 2005

My Commission Expires:

                                             Notary Public

"OFFICIAL SEAL"
DEBRA A. FITZGERALD
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 06/18/20__

DOC #:317195                    APPL #:0000743225                  Initials:
-6(IL) (0010)                       Page 15 of 15                  V. M            Form 3014  1/01

                                        /5

# EXHIBIT 4

CERTIFICATION OF DEATH RECORD

17-00349.30.4:Proposed Findings of Fact and Conclusions of Law:Exhibit Entered: 10/2/2017 5:44:14 PM by:Ariel Weissberg Page 2 of 2

# WILL COUNTY LOCAL REGISTRAR
## JOLIET, ILLINOIS
### MEDICAL CERTIFICATE OF DEATH

STATE FILE NUMBER 2013 0056959

DATE ISSUED 7/26/2013

| DECEDENT'S LEGAL NAME | SEX | DATE OF DEATH |
|---|---|---|
| VIJAYAGEETHA MULKANOOR | FEMALE | JULY 26, 2013 |

| COUNTY OF DEATH | AGE AT LAST BIRTHDAY | DATE OF BIRTH |
|---|---|---|
| WILL | 47 YEARS | MARCH 04, 1966 |

| CITY OR TOWN | HOSPITAL OR OTHER INSTITUTION NAME |
|---|---|
| MOKENA | 21405 SADDLE LANE |

**PLACE OF DEATH** DECEDENT'S HOME

| BIRTHPLACE | SOCIAL SECURITY NUMBER | STATUS AT TIME OF DEATH | SURVIVING SPOUSE/CIVIL UNION PARTNER'S MAIDEN NAME | EVER IN U.S. ARMED FORCES? |
|---|---|---|---|---|
| INDIA | 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 | MARRIED | PREMSAGAR MULKANOOR | NO |

| RESIDENCE | APT. NO. | CITY OR TOWN | INSIDE CITY LIMITS? |
|---|---|---|---|
| 21405 SADDLE LANE | | MOKENA | YES |

| COUNTY | STATE | ZIP CODE | FATHER/CO-PARENT'S NAME PRIOR TO FIRST MARRIAGE/CIVIL UNION | MOTHER/CO-PARENT'S NAME PRIOR TO FIRST MARRIAGE/CIVIL UNION |
|---|---|---|---|---|
| WILL | IL | 60448 | VITTAL AKARAPU | BHARATHAMMA AKARAPU |

| INFORMANT'S NAME | RELATIONSHIP | MAILING ADDRESS |
|---|---|---|
| PREMSAGAR MULKANOOR | HUSBAND | 21405 SADDLE LANE, MOKENA, IL, 60448 |

| METHOD OF DISPOSITION | PLACE OF DISPOSITION | LOCATION - CITY OR TOWN AND STATE | DATE OF DISPOSITION |
|---|---|---|---|
| CREMATION | HEARTLAND MEMORIAL CENTER | TINLEY PARK, IL | JULY 27, 2013 |

**FUNERAL HOME** HEARTLAND MEMORIAL CENTER, 7151 183RD STREET, TINLEY PARK, IL, 60477

| FUNERAL DIRECTOR'S NAME | FUNERAL DIRECTOR'S ILLINOIS LICENSE NUMBER |
|---|---|
| JAMES C HIRSCH | 034011706 |

| LOCAL REGISTRAR'S NAME | DATE FILED WITH LOCAL REGISTRAR |
|---|---|
| JOHN J CICERO | JULY 26, 2013 |

**CAUSE OF DEATH** PART I METASTATIC CHOLANGIO CARCINOMA

| IMMEDIATE CAUSE (Final disease or condition resulting in death) | a | | MONTHS |
|---|---|---|---|
| | b | Due to (or as a consequence of): | |
| | c | Due to (or as a consequence of): | |
| | | Due to (or as a consequence of): | |

APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH

PART II. Enter other *significant conditions contributing to death* but not resulting in the underlying cause given in PART I.

| WAS AN AUTOPSY PERFORMED? | NO |
|---|---|
| WERE AUTOPSY FINDINGS USED TO COMPLETE CAUSE OF DEATH? | N/A |

| FEMALE PREGNANCY STATUS | MANNER OF DEATH |
|---|---|
| NOT PREGNANT WITHIN LAST YEAR | NATURAL |

| DATE OF INJURY | TIME OF INJURY | PLACE OF INJURY | INJURY AT WORK? |
|---|---|---|---|
| | | | |

**LOCATION OF INJURY**

| DESCRIBE HOW INJURY OCCURRED. | IF TRANSPORTATION INJURY, SPECIFY |
|---|---|
| | |

| ATTEND THE DECEASED? | DATE LAST SEEN ALIVE | WAS MEDICAL EXAMINER OR CORONER CONTACTED? | DATE PRONOUNCED | TIME OF DEATH |
|---|---|---|---|---|
| YES | JULY 26, 2013 | YES | | 03:59 AM |

| CERTIFIER | DATE CERTIFIED |
|---|---|
| PHYSICIAN | JULY 26, 2013 |

| NAME, ADDRESS AND ZIP CODE OF PERSON COMPLETING CAUSE OF DEATH | PHYSICIAN'S LICENSE NUMBER |
|---|---|
| VIDYA KORA, 3723 FRANKLIN ST, MICHIGAN CITY, INDIANA, 46360 | 01034806 |

This is to certify that this is a true and correct copy from the official death record filed with the Illinois Department of Public Health.

*John J. Cicero, M.H.A.*

John J. Cicero, M.H.A.
Executive Director and Local Registrar
Will County Health Department

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# EXHIBIT 5

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 11** |
| | ) | **Case No. 17-18799** |
| **PREMSAGAR MULKANOOR,** | ) | |
| | ) | **Hon.  Jack B. Schmetterer** |
| Debtor. | ) | **Room 682** |
| | ) | |
| **PREMSAGAR MULKANOOR,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adversary Proceeding No.** |
| | ) | |
| **AMERICAN HOME MORTGAGE** | ) | |
| **CORP. d/b/a  HLB MORTGAGE, and** | ) | |
| **OCWEN LOAN SERVICES, LLC** | ) | |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF DEVVRAT SINHA

I, Devvrat Sinha, being first duly sworn on oath, attest and state as follows:

1.  I am the attorney for the Debtor/Defendant in the instant adversary proceeding.

2.     On July 13, 2017, at 11:00 a.m. I had a telephone conversation with Edward L.

Schnitzer, counsel to Steve Sass, the Trustee of the American Home Mortgage Liquidation Plan

for the American Home bankruptcy cases pending in the Delaware Bankruptcy Case as Case No.

07-11047 ("Delaware Bankruptcy Case").  Mr. Schnitzer informed me that he had reviewed the

adversary complaint filed in in the instant action and that he would consent to relief from the

automatic stay under the Liquidation Plan entered in the Delaware Case and would further not

oppose any *in rem* action relating to the Debtor/Defendant's real property located at 21405

Saddle Lane, Mokena, Illinois 60448 ("Mokena Property").

Page 1 of 2

3.      In that conversation Mr. Schnitzer informed me that the liquidating trustee for the Delaware Bankruptcy Case had not received any disbursements from Ocwen on the Loan attached to the Complaint.

4.      On August 29, 2017, I circulated a Certification of Counsel and a Consent Order to Mr. Schnitzer, Joseph Orbach (attorney for the Trustee, Steve Sass), Jeffrey Zawadzki (attorney for the Trustee, Steve Sass) and Thomas Horan (special counsel for the Debtor/Defendant) to be entered in the Delaware Bankruptcy Case.

5.      The Certification of Counsel and Consent Order were filed by special counsel, Thomas Horan, on September 1, 2017 and granted on September 5, 2017 by Judge Christopher Sontchi in the Delaware Bankruptcy Case.

If called as a witness, I would be able and competent to testify to the matters herein.

### VERIFICATION

I, Devvrat Sinha, under penalties as provided by law pursuant to 28 U.S.C. 1746 of the United States Code, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.


_____/s/ Devvrat Sinha_____
Devvrat Sinha

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 11** |
| | ) | **Case No. 17-18799** |
| **PREMSAGAR MULKANOOR,** | ) | |
| | ) | **Hon. Jack B. Schmetterer** |
| Debtor. | ) | **Room 682** |
| _____ | ) | |
| **PREMSAGAR MULKANOOR,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adversary Proceeding No. 17-00349** |
| | ) | |
| **AMERICAN HOME MORTGAGE** | ) | |
| **CORP. d/b/a HLB MORTGAGE, and** | ) | |
| **OCWEN LOAN SERVICES, LLC** | ) | **Hearing Date: October 12, 2017** |
| | ) | **Hearing Time: 10:00 a.m.** |
| Defendants. | ) | |

## NOTICE OF FILING

To:     See Attached Service List

PLEASE TAKE NOTICE THAT on October 2, 2017, we filed with the Clerk of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, **PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW,** a copy of which is attached hereto and served upon you.

**PREMSAGAR MULKANOOR,** Plaintiff

By:_____/s/ Ariel Weissberg_____
One of his attorneys

Ariel Weissberg, Esq. (Attorney No. 03125591)
Rakesh Khanna, Esq. (Attorney No. 06243244)
Devvrat Sinha, Esq. (Attorney No. 6314007)
Weissberg and Associates, Ltd.
401 S. LaSalle St., Suite 403
Chicago, Illinois 60605
T. 312-663-0004
F. 312-663-1514
Email: dev@weissberglaw.com

17-00349:31.0:Notice of Filing:Main Document Entered: 10/2/2017 5:50:35 PM by:Ariel Weissberg Page 2 of 2

## CERTIFICATE OF SERVICE

I, Ariel Weissberg, an attorney, certify that on October 3, 2017, I caused **PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** to be served on the following party by first class U.S. mail, postage prepaid and first class certified mail, postage prepaid:

Ocwen Loan Services, LLC
c/o Ronald Farris, Manager
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409


_____/s/ Ariel Weissberg_____
Ariel Weissberg