United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re: | |
| PREMSAGAR MULKANOOR, | Chapter 11 |
| Debtor. | Bankruptcy No. 17 BK 18799 |
| | Honorable Judge Jack B. Schmetterer |
| PREMSAGAR MULKANOOR, | |
| Plaintiff | |
| v. | Adversary No. 17 AP 00349 |
| AMERICAN HOME MORTGAGE | |
| CORP, d/b/a HLB MORTGAGE, and | |
| OCWEN LOAN SERVICES, LLC | |
| Defendants. | |

## OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 82 & 85]

Debtor-Plaintiff Premsagar Mulkanoor ("Plaintiff") filed the instant adversary complaint against Defendants American Home Mortgage Corp. d/b/a HLB Mortgage and Ocwen Loan Servicing, LLC. Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2005-1, as successor to HLB Mortgage was granted leave to intervene as a defendant on January 4, 2018. [Dkt. No. 54.] American Home Mortgage Corp. d/b/a HLB Mortgage was dismissed as a defendant party on February 1, 2018, upon Plaintiff's request. [Dkt. No. 62.] Plaintiff's pleads two counts in his Complaint. First, he seeks a determination as to the extent of the lien Defendants have on the property and to avoid the Mortgage on his residence, 21405 Saddle Lane, Mokena, IL. Second, Plaintiff alleges unjust enrichment on the part of Ocwen and seeks to have mortgage payments made to it returned to him.

The parties agree that there is no genuine dispute as to any material fact. Thus, both parties have filed Motions for Summary Judgment which are considered together here.

For the reasons articulated below, Defendants' Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.

## UNDISPUTED FACTS

Plaintiff is an individual and resident of Illinois who resides at 21405 Saddle Lane, Mokena, IL 60448 ("the Property"). He is the debtor in the underlying Chapter 11 bankruptcy reorganization case. On or about December 10, 2001, Plaintiff and his wife Mrs. Vijayageetha Mulkanoor ("Mrs. Mulkanoor") contracted with DeBello Builders, Inc., which conveyed to the couple as joint tenants fee simple interest in the Property by Warranty Deed. [Dkt. No. 81.] On June 26, 2002, Plaintiff and Mrs. Mulkanoor received a loan worth $880,000.00 from Marquette Bank, evidenced by a promissory note and construction mortgage on the Property. [Dkt. No. 87.] Plaintiff and Mrs. Mulkanoor moved into the Property in 2003.

ON November 17, 2003, Mrs. Mulkanoor sought and obtained a loan of $880,000.00 from First Home Mortgage and promised to repay that loan as evidenced by a promissory note. Plaintiff testified at his deposition that only his wife pursued that loan because he was seeking other business loans. [Dkt. No. 87, Exh. 3.] Debtor and Mrs. Mulkanoor executed a second mortgage on the Property to secured the indebtedness. The mortgage was recorded with the Will County Recorder of Deeds on January 22, 2004. [Dkt. No. 87, Exh. 4.]

On December 30, 2004, Plaintiff signed a Uniform Residential Loan Application as "co-borrower" with regards to the subject loan. [Dkt. No. 87, Exh. 5.] On January 24, 2005, Plaintiff signed a Truth-in-Lending Disclosure Statement as "borrower" with regards to the subject loan. [Dkt. No. 87, Exh. 6.] Contemporaneously, Mrs. Mulkanoor borrowed and proised to repay a loan of $945,000.00 from American Home Mortgage Corp., d/b/a HLB Mortgage ("HLB"). Only Mrs. Mulkanoor signed the note. [Dkt. No. 87, Exh. 7.]

Both Plaintiff and Mrs. Mulkanoor signed and executed the mortgage on the Property on January 24, 2005, and that mortgage was recorded with the Will County Recorder of Deeds on February 3, 2005 against Mrs. Mulkanoor. [Dkt. No. 87, Exh. 8.] Plaintiff's signature appears as a "Borrower" on the mortgage and he initialed each page of the mortgage, though he contends that he was told and understood that he would be signing only as a witness to the mortgage. Plaintiff asserts that he never intended to be bound by the note or the mortgage. [Dkt. No. 81, Exh. 6.]

Not long after the loan was originated and the note executed, American Home Mortgage Securities, LLC acquired the note and created the American Home Mortgage Investment trust 2005-1. The note was transferred to that trustee entity pursuant to a March 23, 2005 indenture

2

agreement. [Dkt. No. 87, Exhs. 11 & 12.] Wells Fargo Bank, N.A. is the master servicer and securities administrator for the trust that holds the note, pursuant to an RMBS master servicing agreement dated March 23, 2005. [Dkt. No. 87.] Ocwen became the successor loan servicer for the trust in March of 2013, pursuant to the Notice of Servicing Transfer to Wells Fargo and Notice of Servicing Transfer to Borrower. [Dkt. No. 87, Exhs. 13 & 14.]

Plaintiff and Mrs. Mulkanoor made mortgage payments to these various entities over the course of several years. On July 26, 2013, Mrs. Mulkanoor passed away. [Dkt. No. 81.] Ocwen continued to send mortgage loan statements addressed to Mrs. Mulkanoor to the Property. [Dkt. No. 87.] Plaintiff informed Ocwen through his attorney at the time that he was the executor of his wife's will. [Dkt. No. 87.] Subsequently, Ocwen continued to send the mortgage loan statements to the Property, addressed to the estate of Mrs. Mulkanoor. [Dkt, No. 87.] Plaintiff continued to make forty-seven (47) loan payments from the same joint checking account that he and Mrs. Mulkanoor paid the mortgage out of prior to her death. [Dkt. No. 87.] The payments totaled $475,020.03. [Dkt. No. 87.] Ocwen received the payments, remitted them to Wells Fargo and the principal balance of the loan was reduced accordingly. [Dkt. No. 87.] The principal balance of the loan was reduced from $510,144.72 to $231,630.82 during the four year period in which Plaintiff continued to make the loan payments. [Dkt. No. 87.] Plaintiff has continued to use the Property as his primary residence. [Dkt. Nos. 81 & 87.]

On June 21, 2017, Debtor filed his petition for Chapter 11 bankruptcy relief. He initiated the instant adversary proceeding on June 27, 2017 against American Home Mortgage Corp. d/b/a HLB Mortgage and Ocwen Loan Servicing, LLC. Ocwen Loan Servicing was originally found in default, but Plaintiff and the correctly named party, Ocwen Loan Services presented an agreed order vacating that judgment [Dkt. No. 45]. Defendant-Intervenor Deutsche Bank National Trust filed a Motion to Intervene as a defendant which was granted [Dkt. No. 54]. Plaintiff's Complaint alleged two counts. First, he sought a determination as to the extent and validity of the lien against the Property. Plaintiff alleged that only his now-deceased wife signed the note and mortgage. As he himself did not sign, Plaintiff argued that pursuant to Illinois law, as an owner of the property in joint tenancy with his wife, upon her death the property passed to him free and clear of all liens. Second, Plaintiff alleged that the Defendants had been unjustly enriched as a result of his continued payments on the mortgage after his wife's death totaling approximately $461,783.27. Debtor argued that because he never signed the note or mortgage, there was no

3

contract obligating him to make these payments and as such, the Defendants should reimburse the amount he has paid on the mortgage and note he did not sign. [Dkt. No. 1.]

Defendants jointly filed an Answer and Amended Answer to Plaintiff's Complaint. [Dkt. Nos. 72 & 76.] The Defendants denied that only Mrs. Mulkanoor signed the mortgage, but admitted that she was the only party to sign the note. [Dkt. No. 76.] Defendants also asserted six affirmative defenses to Plaintiff's Complaint. First, Defendants asserts that by continuing to live in the home and making mortgage payments, Plaintiff has waived a right he had to enforce with conduct inconsistent with that right. Second, Defendants assert that pursuant to Illinois law a party that accepts the benefits of an agreement is estopped from denying its existence or from performing any obligations under its terms. By continuing to live in the home and paying the mortgage, Plaintiff is estopped from asserting that the mortgage ceased upon his wife's death. Third, Defendants argue that Plaintiff inexcusably delayed filing this action, materially prejudicing them, asserting that Plaintiff waited nearly four years after he alleged the mortgage was invalidated. Fourth, Defendants assert that having used the proceeds of the Loan and Note to pay off and obtain release of the 2003 mortgage held by First Home Mortgage, HLB obtained whatever perfected security interest that First Home Mortgage had in the Property. Fifth, Defendants alternatively argue that even if there were no formal agreement between HLB, Plaintiff and Mrs. Mulkanoor as to what rights HLB obtained upon the use of the loan to pay off the 2003 mortgage, it should have the same rights that First Home Mortgage had in the Property because it did not do so voluntarily, but rather to get some benefit in the bargain. Sixth, Defendants assert that because Plaintiff continued to pay the Mortgage for four years after his wife's death, he ratified the mortgage through his compliance with its terms and receipt of benefits.

Plaintiff answered these affirmative defenses, essentially denying the applicability of each, and only admitting that he and his wife entered jointly into the 2002 and 2003 notes and mortgages, but not the instant note and mortgage. Plaintiff also stated that he continued to pay the mortgage after his wife's death and continues to reside in the Property. [Dkt. No. 74.]

The adversary was set for trial by a final pre-trial order entered on February 2, 2018. [Dkt. No. 60.] The trial was scheduled to take place on the afternoons of September 24 and 25, 2018. However, the parties indicated at the pre-trial conference that they did not believe there were any genuine disputes with regards to the material facts of the case, and that rather than

4

going to trial, the Court would be able to rule on cross-motions for summary judgment. Plaintiff filed his Motion for Summary Judgment on August 6, 2018. [Dkt. No. 82.] Defendants jointly filed their Motion for Summary Judgment that same day. [Dkt. No. 86.] The cross-motions were taken under advisement by the Court and the trial was cancelled, subject to being reset once the motions were ruled upon. [Dkt. No. 110.]

## A. Plaintiff's Motion for Summary Judgment

Plaintiff's Motion for Summary Judgment and the accompanying Memorandum of Law in Support of that Motion lay out several theories as to why the mortgage should be avoided and why Defendants should be required to return the mortgage payments to Plaintiff. Plaintiff first argues that the mortgage document itself identifies the lender as "HLB Mortgage" rather than the correct party, "HLB Mortgage Services Corp." Plaintiff asserts that pursuant to Seventh Circuit precedent, documents that contain even "seemingly minor clerical" errors can be avoided by a Bankruptcy Trustee exercising his strong-arm powers. *In re Duckworth*, 776 F.3d 453, 458 (7th Cir. 2014). Moreover, Plaintiff asserts that the Seventh Circuit panel in *Duckworth* prohibited the use of parol evidence against a Trustee. *Id.* Here, Plaintiff argues, the drafter of the mortgage did not identify itself correctly, and the mortgage document is therefore invalid. Plaintiff also asserts that because the identity of the mortgagee is incorrect, the mortgage cannot be protected by the safe harbor clause of the Illinois Conveyances Act. 765 ILCS 5/11. Furthermore, Plaintiff argues that even were the Court to consider parol evidence in contravention of *Duckworth*, the correct entity at the time the mortgage was executed, HLB Mortgage Services Corp., was dissolved on April 14, 2011. As such, a subsequent creditor would only know that a mortgage belonged to a company that has since dissolved, and thus the mortgage can be avoided by a Trustee standing in the shoes of a hypothetical lien creditor.

Second, Plaintiff argues that a *bona fide* purchaser of the Property would not have had constructive notice of the mortgage, warranting its avoidance. As the mortgage was not recorded against Plaintiff, only Mrs. Mulkanoor, he argues that Defendants cannot meet their burden of proof if they are charging actual or constructive notice. *Pedersen and Houpt, P.C. v. Main Street Village West*, 2102 Ill. App. 112971 (1st Dist. 2013); *Kreuger v. Oberto*, 309 Ill. App. 3d 358 (2nd Dist. 1999). Plaintiff argues that because the mortgage was never recorded against him, maintaining that he was never a borrower within the terms of the mortgage itself, a bona fide

purchaser could not have seen the mortgage in the grantor/grantee index and thus, could not have had constructive notice of such a mortgage.

Plaintiff next argues that because he is not an named obligor on either the note or mortgage, his interest in the property as a joint tenant with Mrs. Mulkanoor was unaffected by the mortgage. *Citimortgage v. Parille*, 2016 Ill. App. 2d 150286 (2nd Dist. 2016). Plaintiff asserts that because he is not a "borrower" within the meaning of the mortgage, upon his wife's death, the right of survivorship from the joint tenancy made him the owner of the Property free and clear of any encumbrances on his wife's ownership interest. *Harms v. Sprague*, 105 Ill.2d 215 (1984). Plaintiff reasserts his argument that even though he signed the mortgage, because it does not identify him as a "borrower," a specifically defined term in the document itself, he cannot legally be bound by his signature.

Additionally, Plaintiff argues that each of Defendants' asserted affirmative defenses should be denied because he is bringing this adversary as the debtor-in-possession under his strong-arm powers, and not in his individual capacity. Plaintiff argues that when a bankruptcy trustee or debtor-in-possession is using his strong-arm powers, his intent or knowledge does not matter, even if he has actual knowledge of a security interest in some property. *In re Sandy Ridge Oil Co., Inc.*, 807 F.2d 1332 (7th Cir. 1986). Debtors-in-possession may avoid improperly recorded mortgages even if they have actual knowledge of them. *Id*. As such, Plaintiff asserts that none of Defendants' affirmative defenses are applicable. The waiver and laches defenses, argues Plaintiff, are inapplicable because while the Debtor himself may have brought such an action earlier, the debtor-in-possession brought this adversary very quickly after the bankruptcy case was filed. Plaintiff is equally dismissive of the equitable lien defense because unperfected or defective security interests are always susceptible to avoidance by trustees or debtors-in-possession even when such liens are applicable outside of bankruptcy. *Duckworth*, 776 F.3d at 458. Plaintiff argues that subrogation and ratification are only applicable against Plaintiff individually and not as the debtor-in-possession. *In re Perrow*, 498 B.R. 560, 580 (Bankr. W.D. Va. 2013). Finally, Plaintiff asserts that estoppel is inappropriate because even in a case where a debtor receives value from a secured creditor, a debtor-in-possession may still strong-arm an improperly perfected security interest. *Duckworth*, 776 F.3d at 458.

Finally, Plaintiff argues that because he had no obligation to make the mortgage payments sent to the Property on behalf of Mrs. Mulkanoor's estate, Defendants were unjustly

enriched in the amount of $461,783.27 (forty-six months worth of mortgage payments). *Nesby v. Country Mut. Ins. Co.*, 346 Ill. App. 3d 564, 566-67 (2004). Plaintiff argues that Ocwen did not inform him that he no longer had an obligation to pay after his wife's death, and so he continued doing so, and Defendants continued to take the mortgage payments despite understanding that he took his wife's interest in the property free and clear of any encumbrance. As such, argues Plaintiff, all amounts paid to Defendants since the passing of Mrs. Mulkanoor should be returned to him.

Defendants filed their Joint Brief in Opposition to Debtor's Motion on August 20, 2018. In response to Plaintiff's argument that because he did not sign the note and did not sign the mortgage as a "borrower" his interest in the property is unencumbered, Defendants argue that, "it is not uncommon for notes and the corresponding mortgages securing them to be executed by different parties." *OneWest Bank FSB v. Cielak*, 67 N.E.3d 884, 887 (Ill. App. Ct. 2016). In cases where such documents are "signed together, executed contemporaneously, and intended to complement each other," Defendants assert that Illinois precedent allows for an interpretation binding Plaintiff to the terms of both the note and mortgage. *Id.* Furthermore, Defendants argue that Plaintiff's reliance on *Citimortgage v. Parille*, 49 N.E. 3d 869 (Ill. App. Ct. 2016) is misplaced because Plaintiff not only initialed each page of the mortgage in this case, but also signed as a "borrower" rather than for the purpose of waiving his homestead rights.

Furthermore, Defendants argue that Plaintiff cannot avoid the mortgage as either a hypothetical lien creditor nor a *bona fide* purchaser pursuant to 11 U.S.C. § 544(a) of the Bankruptcy Code for three reasons. First, Defendants argue that the mortgage is not defective under the Illinois Recording Act because it contains all of the information required by statute and Plaintiff's reliance *Duckworth* is misguided because that case dealt with the security requirements of the UCC. 765 ILCS 5/11; *Duckworth*, 776 F.3d at 453. Second, Defendants argue that even if the Court considers the naming of "HLB Mortgage" rather than "HLB Mortgage Services Corp." as the intended mortgagee a defect, a hypothetical creditor or purchaser would have had constructive notice (both record and inquiry notice) of the mortgage and courts interpreting Illinois law have consistently upheld the validity of mortgages that misidentify parties. *In re Crane*, 742 F.3d 702, 706 (7th Cir. 2013); *Covey v. Citizens Sav. Bank (In re Pak Builders)*, 284 B.R. 663, 678 (Bankr. C.D. Ill. 2002); *Beaver v. Slanker*, 94 Ill. 175 (Ill. 1879). A hypothetical creditor or purchaser, argue Defendants, would read the mortgage, see

7

that HLB Mortgage was the mortgagee and see that it was used for business purposes, allowing the creditor or purchaser to seek out the proper business name of the company. Third, Defendants argue that despite HLB Mortgage Services Corp. dissolving on April 14, 2011, the mortgage was assigned to American Home Mortgage (subsequently, the note and mortgage were assigned to various other entities before ultimately being assigned to Deutsche Bank) in an Assignment of Mortgages recorded later. Defendants therefore argue that a hypothetical creditor or purchaser would have seen that even though HLB Mortgage Services Corp. had dissolved in 2011, no release of mortgage had ever been recorded, and would thus have had constructive notice that some other entity continued to hold the note and mortgage. Finally, Defendants argue that because any search of the Plaintiff's name in the grantor-grantee index would show that DeBello Builders, Inc. conveyed the property to him and Mrs. Mulkanoor as joint tenants, a *bona fide* purchaser would then have constructive notice to search Mrs. Mulkanoor's name to find any encumbrances on the property.

Defendants then argue that Plaintiff is plainly incorrect that affirmative defenses cannot be asserted against a debtor-in-possession. Defendants assert that while the trustee or debtor-in-possession can step into the shoes of a *bona fide* purchaser pursuant to 11 U.S.C. § 544(a), their rights are still limited to those they would have under the applicable state law as such an entity. *Matter of Chaseley's Foods, Inc.*, 726 F.2d 303, 307 (7th Cir. 1983). Consequently, Defendants argue, there is no blanket ban on asserting waiver, estoppel, laches, subrogation or ratification as Plaintiff contends.

Finally, Defendants argue that because Plaintiff voluntarily made payments on the mortgage, he cannot recover any amounts that he has paid because he had full knowledge of the facts. *Brown v. SBC Communs., Inc.*, No. 05 CV 777-JPG, 2007 U.S. Dist. LEXIS 14490, at *26 (S.D. Ill. 2007) (*quoting Synfuel Techs. V. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

Plaintiff filed his Reply on August 27, 2018. Plaintiff first argues that the Defendants ignore fact that he was allegedly fraudulently induced into signing the mortgage by one of Defendants' agents. He reiterates his argument that he was told he was signing the mortgage only as a witness and that he never intended to be bound by the mortgage. He argues that although Defendants point to contemporaneously signed documents, including loan applications, Plaintiff

8

did not supply any financial information in those documents as he never had the intent to be bound by any mortgage.

Furthermore, Plaintiff reiterates that pursuant to Illinois precedent, because he was not named as a borrower in the mortgage and because he did not intend to sign the mortgage as a borrower, he should not be bound by it. *Fifth Third Mortgage Co. v. Lott*, 2018 Ill. App. (1st) 170912-U, ¶¶ 32-33 (1st Dist. June 29, 2018).

Plaintiff then argues that because the current mortgage was never recorded against him, no *bona fide* purchaser would have notice of any such mortgage. Although the mortgage was properly recorded against Mrs. Mulkanoor, argues Plaintiff, because she is deceased, the only relevant inquiry is whether the Plaintiff has any encumbrance against any property which he owns. Additionally, Plaintiff argues for the first time that the question of whether a *bona fide* purchaser would have constructive notice is a factual question improper for summary judgment. *Schaffner v. 514 W. Grand Place*, 324 Ill. App. 3d 1033, 1046 (1st Dist. 2001). Plaintiff asserts that because Defendants are charging actual or constructive notice, and they have failed to provide evidence or expert testimony on that point, summary judgment should be granted in his favor because they have failed to meet their burden. *Pederson*, 4 N.E.3d at 73.

Plaintiff reiterates his argument that because "HLB Mortgage" is not an entity that existed at the time the mortgage was executed, it is defective and therefore avoidable. As a Bankruptcy Trustee would only be put on inquiry notice based on the "face of the document" itself, Plaintiff argues that as the debtor-in-possession, it is not apparent that "HLB Mortgage" was a d/b/a or that some other corporation might be the actual lender. *In re Heaver*, 473 B.R. 734, 741 (Bankr. N.D. Ill. 2012).

Finally, Plaintiff reiterates that he had no personal obligation on the mortgage, but continued to make the payments, unjustly enriching Defendants. As Defendants did not have a right to collect personally from Plaintiff, a fact which Plaintiff alleges Defendants were aware of, he asserts that that he should be able to recover the amount paid. Moreover, Plaintiff asserts that he was not fully informed of his rights, as his wife and son primarily handled the finances, and thus would not have known that he did not have a personal obligation to pay.

**B. Defendants' Joint Motion for Summary Judgment**

Defendants filed their Joint Motion for Summary Judgment on August 6, 2018. Defendants reiterate many of the same arguments posed in their Response to Plaintiff's Motion

for Summary Judgment. First, Defendants point out that Plaintiff did in fact sign the mortgage on the line labeled as "borrower," and initialed each page along with Mrs. Mulkanoor. Thus, despite admitting that Plaintiff did not sign the note, Defendants argue that that does not absolve him of any duties under the mortgage itself. *BMO Harris Bank, N.A. v. Lesser*, No. 1-14-3115, 2016 Il App (1st) 143115-U, at *P23 (Ill. App. Ct. May 25, 2016). Defendants assert that Plaintiff's argument that he was led to believe he signed the mortgage only as a witness is impermissible parol evidence which does not create a genuine issue of material fact in any case. *Cromeens, Holloman, Siber, Inc. v. AB Volvo*, 349 F.3d 376, 394 (7th Cir. 2003).

Defendants argue that regardless of the legal meaning of Plaintiff's signature, they are entitled to a valid, first-position security interest in the Property because of the principles of subrogation. Defendants assert that there is no dispute that Plaintiff and Mrs. Mulkanoor were both party to the 2002 note and mortgage signed with Marquette Bank. The subsequent 2003 mortgage with First Home Mortgage was also executed by both Plaintiff and Mrs. Mulkanoor, though only Mrs. Mulkanoor signed the 2003 note. Finally, in 2005, Defendants assert that Plaintiff and Mrs. Mulkanoor agreed in writing that the purpose of the loan reflected by the note was to refinance the 2003 note and mortgage held by First Home Mortgage. As the money was used to pay off the Mrs. Mulkanoor's obligation to the previous creditor, First Home Mortgage, and First Home Mortgage had a valid, first-position lien on the Property, the fact that Defendants loaned money to Plaintiff and Mrs. Mulkanoor mean that, pursuant to the principles of subrogation under Illinois law, Defendants obtained the exact same valid, first-position lien on the Property that First Home Mortgage possessed.

Additionally, Defendants argue that Plaintiff has waived any right to argue that he was not liable under the mortgage under a theory of estoppel because a party that relinquishes a known right by "conduct inconsistent with an intent to enforce that right, he was waived it and may not thereafter seek judicial enforcement." *Saverslak v. Davis-Cleaver Produce Co.*, 606 F.2d 208, 213 (7th Cir. 1979), *cert. denied*, 444 U.S. 1078 (1980). Defendants argue that because Plaintiff continued to make payments on the mortgage for four years after his wife's death despite knowing that he had never signed the note, his silent acquiescence evidence his ratification of the mortgage, both by making the payments and by continuing to enjoy the benefits of the mortgage by living in the Property. *United States Bank Nat'l Ass'n v. Cook*, 2009 U.S. Dist. LEXIS 318, at *15-17 (N.D. Ill. Jan. 6, 2009).

10

Finally, Defendants argue that Plaintiff has failed to create a genuine dispute as to whether Ocwen faithfully remitted the mortgage payments to Wells Fargo, and that Wells Fargo remitted the payments to the Trustee for distribution to the beneficiaries of the trust. Defendants assert that contrary to Plaintiff's allegation, Ocwen has not and is not retaining any of the payments that Plaintiff made. Defendants state that Plaintiff does not dispute that Ocwen is remitting payments to the master servicer under its agreement, and thus, Plaintiff's basis for its allegation that Ocwen has unjustly enriched itself has been invalidated.

Plaintiff filed his Response on August 20, 2018. He first argues that Defendants should be barred from introducing the affidavits, former mortgages, truth-in-lending disclosure forms and loan applications attached to their Motion as inadmissible parol evidence because it is being used against the debtor-in-possession. *Duckworth*, 776 F.3d at 458.

Next, Plaintiff reiterates that because he was not a named obligor under the note or mortgage, and because he did not intend to sign as a borrower, but rather as a witness, Mrs. Mulkanoor's interest transferred to him upon her death through the right of survivorship, free and clear of the mortgage. Moreover, Plaintiff reiterates that even if he had signed as a borrower, the mortgage is not effective against him because a hypothetical lien creditor or *bona fide* purchaser would not have actual or constructive notice of the mortgage because it was not recorded against him, only Mrs. Mulkanoor. Additionally, Plaintiff argues that the loan statements sent to the Property confirmed that Mrs. Mulkanoor, and later her estate, was the intended mortgagor, not Plaintiff himself.

Plaintiff next asserts that he was fraudulently induced into executing the mortgage by an agent of the Defendants because he was told that he was signing the mortgage only as a witness, not a borrower. He argues that because he only intended to sign in his capacity as a witness, and was assured that that was all he would be doing, introduction of parol evidence to demonstrate that this exchange was fraudulent is proper. *Wilsmann v. Stearns*, 664 F.Supp. 386, 390 (N.D. Ill. 1987). Additionally, Plaintiff states that Defendants' characterization of this discussion as a "contemporaneous oral agreement" is incorrect, and that it falls squarely within a case for fraud in the inducement.

Plaintiff then argues that equitable subrogation cannot be asserted against him because equitable subordination should not be applied against the Trustee as a *bona fide* purchaser. *In re Gadagliacca*, 403 B.R. 288, 292 (Bankr. W.D.N.Y. 2009). Moreover, Plaintiff states that

equitable subordination only places Defendants in the shoes of the former lender, and under the previous 2003 mortgage, only Mrs. Mulkanoor is the borrower and Plaintiff is never specifically listed as a mortgagor. Furthermore, Plaintiff states that if equitable subordination principles were applied, Defendants' lien would only extend to the $880,000.00 value of the prior mortgage, not the $945,000.00 amount loaned pursuant to the current mortgage. *Aames Capital Corp. v. Interstate Bank of Oak Forest*, 315 Ill. App. 3d 700, 710 (2000). Plaintiff argues that Defendants have not established that the $888,000.00 was not fully repaid, and therefore a genuine dispute would exist as to a material fact about the extent of the lien and Defendants' Motion for Summary Judgment would have to be denied on those grounds.

Plaintiff also argues that because there was never a written agreement obligating him to pay his wife's loan and mortgage payments, Illinois law states that to whatever extent that he agreed to pay Mrs. Mulkanoor's indebtedness, the statute of frauds nullifies such an agreement and ratification would not be a defense. *Murto v. McKnight*, 28 Ill. App. 238 (2nd Dist. 1888).

Finally, Plaintiff reiterates that Deutsche Bank was unjustly enriched because it continued to voluntarily accept payments from him, knowing full well that he was not an obligor on the note, and thus, not liable to pay any of the debt.

Defendants filed their Reply on August 27, 2018. They first argue that the fact that Plaintiff was not listed as a "borrower" on the first page of the mortgage is irrelevant, because that speaks only to the fact that he did not borrow the money under the note with Mrs. Mulkanoor. Defendants assert that Plaintiff is still obligated under the mortgage itself because he did sign it as a "borrower" and initialed each page without qualification. According to Defendants, that means Plaintiff did grant and convey his interest in the Property, but that he was not personally obligated to pay the sums secured by the mortgage.

Next, Defendants argue that Plaintiff has failed to show that he was fraudulently induced into signing the mortgage as a borrower. Defendants argue that in Illinois, a contracting party has a duty to read the documents they sign. *Nilsson v. NBD Bank of Illinois*, 313 Ill. App. 3d 751 (1st Dist. 1999). They also assert that a party cannot blindly sign a contract without reading its contents and then later claim fraud. *Belleville National Bank v. Rose*, 119 Ill. App. 3d 56 (5th Dist. 1983).

Moreover, Defendants reject Plaintiff's argument that the affidavit, truth-in-lending disclosure documents, previous mortgages, and loan application documents attached to their

motion are inadmissible parol evidence because Illinois law only bars such evidence when it is used to create an ambiguity in a contract that is unambiguous on its face. *Del Vecchio v. Cohen*, 288 A.D.2d 426, 428 (2001). Illinois' parol evidence rule "generally precludes evidence of understandings not reflected in the contract, reached before or at the time of its execution, that would vary or modify its terms." *Asset Recovery Contr., LLC v. Walsh Constr. Co.*, 2012 IL App (1st) 101226 at *P67 (1st Dist. 2012). The documents Defendants are attempting to introduce, they argue, do not serve to vary or contradict the terms of the mortgage, but rather, illustrate the ownership history of the note and mortgage, Ocwen's role in remitting payments, to show that Plaintiff signed as a borrower, and to show that that Plaintiff is familiar with the process of mortgaging his interest in the Property.

Defendants then argue that even though Plaintiff is not obligated under the note, he did mortgage his interest in the Property. Defendants argue that Plaintiff's insistence that the mailing of the loan statements only to his wife or her estate is irrelevant; Defendants acknowledged that he was not liable under the note, but he was still obligated pursuant to the mortgage.

Next, Defendants attempt to refute Plaintiff's argument that a hypothetical creditor or *bona fide* purchaser would not have constructive notice that the mortgage encumbered Plaintiff's interest in the property. They reiterate that the use of the business name of the mortgagee on the mortgage does not preclude any hypothetical lien holder or purchaser from finding out that HLB Mortgage Services Corp. was the proper, legal name of the mortgagee based on a search of registered corporations in New York. Moreover, Defendants assert that the mortgage is recorded properly in the grantor-grantee index as any hypothetical lienholder or purchaser would search Plaintiff's name, discover that he owned the property in joint tenancy with Mrs. Mulkanoor, and then search her name as well to discover the series of mortgages in question.

Defendants also argue that Plaintiff confuses the doctrine of ratification and the voluntary payment doctrine. Under the voluntary payment doctrine, "money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered by the payor solely because," of mistake or illegality. *Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 847 (1995). They assert that they never argued that Plaintiff ratified his wife's obligation pursuant to the mortgage and note, but rather, that Plaintiff ratified his own obligation under the mortgage by making the monthly payments and accepting the benefits of it by living in the Property. *United States Nat'l Ass'n v. Cook*, 2009 U.S. Dist. LEXIS

318, at *15-17 (N.D. Ill. Jan. 6, 2009). Defendants reiterate that Plaintiff did not assume his wife's obligations under the note; rather, they argue that because he had full knowledge of the facts and made voluntary payments, under the voluntary payment doctrine, he cannot retrieve the payments that he made. *Brown*, 2007 U.S. Dist. LEXIS 14490, at *26.

Defendants next assert that Plaintiff is incorrect that an equitable subrogation defense is wholly inapplicable to a trustee or debtor-in-possession. Defendants argue that Plaintiff's interpretation of *In re Badagliacca* is incorrect and that whether a court finds equitable subrogation appropriate is wholly dependent on the facts of the case. 403 B.R. at 292-93. They argue that unlike the facts of that case, Defendants in this case did properly draft and record the mortgage. Defendants also refute Plaintiff's argument that the 2003 mortgage was not executed by Plaintiff by pointing out that the 2003 mortgage was simply a refinancing of the 2002 mortgage which he did execute. Therefore, according to Defendants' theory, the 2003 mortgage was equitably subordinated to the 2002 mortgage, and the instant mortgage was subordinated to the 2003 mortgage, meaning that Defendants have all the same rights as the initial lienholder from 2002 as against Plaintiff. Finally, Defendants dispute Plaintiff's assertion that equitable subrogation requires that the mortgage is only valid to the dollar extent of the 2003 mortgage by indicating that the case Plaintiff relied upon was decided under conventional subrogation grounds, and therefore inapplicable. According to Defendants, under the principles of equitable subordination, no such limitation exists.

Finally, Defendants argue that Plaintiff would not be able to recover the payments made to them under 11 U.S.C. 547 because they were not Plaintiff's creditors, they were his wife's creditors. Moreover, because Plaintiff did not sign the note, there is no antecedent debt upon which he is paying. Thus, argue Defendants, 11 U.S.C. 547 is wholly inapplicable.

## JURISDICTION AND VENUE

This Court has jurisdiction to hear and determine this controversy pursuant to 11 U.S.C. § 1334 and the Internal Operating Procedure of the U.S. District Court for the Northern District of Illinois No. 15(a). This adversary proceeding is a core proceeding pursuant to 11 U.S.C. § 157(b)(1), (b)(2)(A) and (K). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## ANALYSIS

### A. Standard for Summary Judgment

A court may properly grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with legally sufficient affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. The burden is on the moving party to identify portions of pleadings, depositions, and any discovery-related materials that demonstrate an absence of any dispute as to a genuine issue of material fact. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That burden, "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

"Merely alleging a factual dispute cannot defeat the summary judgment motion." *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989). The non-moving party must set forth specific facts, through affidavits or other materials, which demonstrate a genuine dispute over a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is genuinely in dispute when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose a motion for summary judgment. *Id.* at 250. The parties have filed cross-motions for summary judgment. The motions must be ruled on independently and must be denied if there are genuine issues of material fact. *ITT Indus. Credit Co. v. D.S. Am., Inc.*, 674 F.Supp. 1330, 1331 (N.D. Ill. 1987).

**B. Plaintiff's Discussion of Possible Factual Disputes in His Supplemental Brief are Not Material and do Not Preclude a Ruling on the Cross Motions for Summary Judgment**

As a preliminary matter, on September 11, 2018, shortly after the Court took the Cross Motions for Summary Judgment under advisement, Plaintiff filed a Motion seeking a status conference to clarify his position as to two alleged factual disputes that were discussed in court earlier that day. [Dkt. No. 109.] This Court treated the filing as an unauthorized supplemental brief and allowed Defendants to file any Response to Plaintiff's filing. [Dkt. Nos. 114 & 116.]

In his Motion, Plaintiff essentially argues that there are two possible disputes of fact that, should the Court determine them to be material, must preclude entry of summary judgment. First, Plaintiff states that should the court find the issue of why he signed the underlying

15

mortgage material, there is a genuine dispute as to that fact. Second, Plaintiff argues that if the
Court determines that the level of diligence required to be conducted by a *bona fide* purchaser is
an issue of material fact, not resolved by case law, then there is a genuine dispute.

As Defendants point out however, neither of these issues are the types of genuinely
disputed material facts that preclude the entry of summary judgment. Plaintiff's first argument,
that the issue of why he signed the underlying mortgage, is not material at all. The Seventh
Circuit has repeatedly held that, "it is a fundamental principle of contract law that a person who
signs a contract is presumed to know its terms and consents to be bound by them." *Paper Exp.,
Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992). Although Plaintiff asserts
a defense of fraud in the inducement with regards to his signing of the mortgage on the
"borrower" line rather than solely as a witness, this is precisely the "scintilla of evidence"
described by the Supreme Court in *Anderson* as being insufficient to preclude the entry of
summary judgment. 477 U.S. at 250. Plaintiff has failed to show that he was fraudulently
induced into signing as a "borrower" rather than a witness. The only evidence he provides is his
deposition testimony signaling his intent to do so, and that an agent of Defendants allegedly told
him that was his purpose for signing. However, Plaintiff has failed to explain satisfactorily why
he initialed each page and then signed the final page of the mortgage on the line clearly marked
"borrower" rather than either of the two lines under the heading "witness." Plaintiff's assertion
that he was fraudulently induced into signing the mortgage is unavailing and the mere assertion
of a factual dispute will not preclude this Court from entering summary judgment.

Plaintiff is, however, correct that pursuant to Illinois precedent, the issue of the level of
diligence required by a *bona fide* purchaser is a factual inquiry, not a purely legal issue.
*Schaffner*, 324 Ill. App. 3d at 1046. Generally, it is true that Illinois courts have found that, based
upon the facts of the case before them, summary judgment is inappropriate when faced with the
question of whether a *bona fide* purchaser had constructive notice. *Id.*; *LaSalle Nat. Bank v. 850
De Witt Condo. Ass'n*, 211 Ill. App. 3d 712, 719 (1991). However, "[m]erely alleging a factual
dispute cannot defeat the summary judgment motion." *Wilder*, 871 F.2d at 1349.

Even when the facts are construed in the light most favorable to the Plaintiff, it is highly
unlikely that a reasonable jury would find that a *bona fide* purchaser would not have had
constructive notice of the mortgage on the Property. Plaintiff's repeated contention that because
the mortgage was not recorded against him the mortgage is therefore somehow defective is

16

incorrect on its face. As Defendants have indicated, Mrs. Mulkanoor was the proper mortgagor, and the mortgage was properly recorded against her. However, the mortgage document itself states in paragraph 13 that, "any Borrower who co-signs this Security Instrument but does not execute the Note (a 'co-signer'): (a) is co-signing this Security Instrument **only to mortgage, grant and convey the co-signer's interest in the Property under the terms of the Security Instrument**; (b) is not personally obligated to pay the sums secured by this Security Instrument." [Dkt. No. 87, Exh. 6.] Although only Mrs. Mulkanoor was listed as "borrower" within the meaning of the note, the Plaintiff was clearly a co-signer, who signed as a "borrower," within the meaning of the mortgage. [Dkt. No. 87, Exh. 7.] Illinois courts have often stated that it is not "uncommon for notes and the corresponding mortgages securing them to be executed by different parties." *OneWest Bank FSB v. Cielak*, 67 N.E.3d 884, 887 (Ill. App. Ct. 2016). Plaintiff's reliance on the *CitiMortgage* case is misplaced. 49 N.E.3d 869. In that case, the husband signed the mortgage subject to the qualification that he did so only to waive his homestead rights. *Id.* Plaintiff made no such qualification when he signed as a co-signing borrower in this case.

A prudent *bona fide* purchaser would therefore have searched Plaintiff's name in the grantor-grantee index and discovered that in 2001, Plaintiff and Mrs. Mulkanoor became owners of the Property in joint tenancy based on the conveyance from DeBello Builders. To clearly understand the chain-of-title, such *bona fide* purchaser would then also search Mrs. Mulkanoor's name to determine whether any mortgage was recorded against her interest, and would discover the instant, unreleased mortgage, also co-signed as borrower by Plaintiff. Whether or not a *bona fide* purchaser would be able to easily determine which entity currently held the mortgage, it is not at all difficult to imagine that such a purchaser would need to seriously inquire as to the encumbrances on the Property. Pursuant to Illinois law, two types of constructive notice exist: a purchaser has record notice of documents in the grantor-grantee index and a purchaser has inquiry notice when it discovers an irregularity that creates a duty of inquiry. *In re Crane*, 742 F.3d 702, 706 (7th Cir. 2013); *In re Ehrlich*, 59 B.R. 646, 650 (Bankr. N.D. Ill. 1986). A party with inquiry notice is imputed with all knowledge that a diligent inquiry would have brought to light. *Ehrlich*, 59 B.R. at 650. The level of diligence required by a *bona fide* purchaser to be put on record or inquiry notice in this case is minimal.

17

In the instant case, a *bona fide* purchaser would have both inquiry and record notice of
the mortgage in question, even when viewed in a light most favorable to the Plaintiff. Therefore,
neither the issue of why Plaintiff signed the mortgage nor the issue of what level of constructive
notice is required of a *bona fide* purchaser is a genuine dispute of a material fact that precludes
the entry of summary judgment as Plaintiff argues in his supplemental brief.

**C. Plaintiff Signed the Mortgage as a Co-Signing Borrower Without Qualification and the
Mortgage is Effective Against His Interest in the Property**

As Plaintiff brought this action to determine the extent and validity of the mortgage on
the Property and to declare that he owns it free and clear of any liens, the central dispute between
the parties is whether the Plaintiff properly mortgaged his interest in the Property at all. As
discussed above, Plaintiff clearly co-signed the mortgage, initialed each page of the mortgage
document, and signed on a line labeled "borrower" rather than either of the marked "witness"
lines. By the terms of the mortgage, a co-signing borrower is a party that has also mortgaged his
or her interest in the Property. The mere fact that he did not sign the note does not mean he
cannot still be obligated under the terms of the mortgage. *BMO Harris Bank, N.A. v. Lesser*, No.
1-14-3115, 2016 IL App. (1st) 143115-U, at *P23 (Ill. app. Ct. May 25, 2016). Plaintiff's interest
in the property is therefore still subject to the mortgage.

Plaintiff has set forth several theories as to why his interest in the property is not subject
to the mortgage or why the mortgage is defective. As discussed above, his assertion that he was
fraudulently induced into signing as a co-signing borrower is meritless. Plaintiff's other
arguments, particularly those regarding the effectiveness of the mortgage itself are equally
baseless.

Plaintiff is correct that pursuant to 11 U.S.C. § 544(a)(1), a trustee or debtor-in-
possession, without any regard to his actual knowledge, may avoid liens as a hypothetical lien
creditor. This is commonly known as exercising the strong-arm powers of the bankruptcy code.
Plaintiff has argued that, as debtor-in-possession and a hypothetical lien creditor under section
544(a)(1), he should be allowed to avoid the mortgage because even seemingly trivial mistakes,
such as mistaken descriptions of a debt in a security agreement, have doomed creditors in
bankruptcy. *In re Duckworth*, 776 F.3d 453 (7th Cir. 2014). Plaintiff first asserts that because
"HLB Mortgage" and not "HLB Mortgage Services Corp." is listed as the lender on the
mortgage, the mortgage is defective pursuant to the Illinois Recording Act and avoidable

18

pursuant to section 544(a)(1). The Illinois Recording Act requires that the mortgage describes the mortgagor, mortgages, the nature and amount of the indebtedness secured, the real estate and that it contains the signatures of the mortgagors. 765 ILCS 5/11. However, as Defendants correctly argue, using the business name of a required entity in a mortgage document does not automatically render the document invalid under the Illinois Recording Act. *Covey v. Citizens Sav. Bank (In re Pak Builders)*, 284 B.R. 663 (Bankr. C.D. Ill. 2002) (upholding the validity of a mortgage that named "PAK Builders, Inc." as mortgagee rather than the business' actual name, "PAK Builders, an Illinois General partnership," even as to a *bona fide* purchaser); *see also Fisher v. Milmine*, 94 Ill. 328, 329 (1880) (finding that where the mortgage accidentally named a fictitious mortgagee, and absent evidence of intent proving otherwise, the conveyance was not invalid). This instant case is not dissimilar: the business name as the mortgagee was used in place of the name of the business as registered in New York, but that alone does not render the mortgage invalid. Moreover, Plaintiff's reliance on *Duckworth* is misplaced because the Seventh Circuit analyzed avoidance of a security instrument pursuant to the UCC, not the Illinois Recording Act. 776 F.3d at 453. And, as Defendants have indicated, Illinois law has generally "favored the reformation of mortgages and deed suffering from mutual mistakes and clerical errors where the intent of the parties can be discerned from the facts surrounding the transaction." *Covey*, 284 B.R. at 663; *see also Richey v. Sinclair*, 47 N.D. 364 (Ill. 1897) and *Beaver v. Slanker*, 94 Ill. 175 (Ill. 1879).

Plaintiff next argues that even if the Court overlooks the fact that HLB Mortgage Services Corp. was misnamed in the mortgage, that entity dissolved on April 14, 2011 and no assignment of mortgage was ever recorded. Once again, the law does not support Plaintiff's position. The terms of the mortgage permit the assignment of a mortgage, and pursuant to Illinois law, the assignee steps into the shoes of the assignor and can enforce the terms of the mortgage. *Fannie Mae v. Kuipers*, 314 Ill. App. 631, 635 (2d Dist. 2000). However, a Seventh Circuit panel has ruled that neither the assignee nor assignor of such a mortgage is under any obligation to record any assignment of mortgage. *Union County v. Merscorp, Inc.*, 735 F.3d 730, 733 (7th Cir. 2013). Until and unless a release of mortgage is recorded then, the fact that an assignment is unrecorded will not have any bearing on the validity or priority of the mortgage. *Kuipers*, 314 Ill. App. at 638. In the instant case, Defendants did not record an assignment of mortgage. However, because a release of mortgage was never filed (indeed, a balance remains on the note), the lack

19

of a recorded assignment, which Defendants were under no obligation to file, cannot be held against them. Therefore, a hypothetical lien creditor would have notice that an unreleased mortgage existed on the property, regardless of whether the entity purported to hold the mortgage was dissolved, and would be under an obligation to inquire as to the nature of the mortgage.

Plaintiff has also argued that under Illinois' parol evidence rule, the Court should not consider any documentation submitted by Defendants outside of the mortgage itself, including the truth-in-lending disclosure forms, affidavits or loan applications. In Illinois, the parol evidence precludes the admission into evidence of any evidence that creates an ambiguity in a contract that is clear on its face. *Del Vecchio v. Cohen*, 288 A.D.2d 426, 428 (2001). In essence, evidence that tends to demonstrate, "understandings not reflected in the contract, reached before or at the time of its execution, that would vary or modify its terms," must be excluded. *Asset Recovery Contr., LLC v. Walsh Constr. Co.*, 2012 IL App (1st) 101226 at *P67 (1st Dist. 2012). Under that construction of the rule, Plaintiff is wrong that the Court must exclude any of these documents filed by the Defendants. As Defendants explain, none of these documents create any *ambiguity* as to the meaning or terms of the mortgage itself. Defendants have never asserted that the loan documents tend to show that Plaintiff was a "borrower" within the meaning of the note. They have always asserted that Plaintiff is a co-signing borrower without qualification with regards to the mortgage, and that his interest in the Property is therefore subject to the mortgage as well. While these documents may tend to show that Plaintiff intended to sign as a co-signing borrower, rather than as a witness, they do nothing to alter the meaning of terms such as "co-signer" or "borrower" within the document itself, and thus, do not constitute parol evidence that must be excluded pursuant to Illinois law.

Plaintiff signed the mortgage as a co-signing borrower, without any qualification. He did not sign as a witness as he purports. The mortgage was properly recorded in the grantor-grantee index such that the debtor-in-possession as a hypothetical lien creditor or *bona fide* purchaser pursuant to 11 U.S.C. § 544(a) would be charged with having constructive notice of the mortgage. And despite Plaintiff's arguments to the contrary, the mortgage itself is not defective simply because it used the lender's business name and an assignment of mortgage from the dissolved corporation to another entity was unrecorded. For those reasons, the portion of Plaintiff's Motion for Summary Judgment seeking to avoid the mortgage is denied, and the

portion of Defendants' Motion for Summary Judgment relating to the avoidance of the mortgage
is granted.

**D. Defendants Hold the Same, Valid, First-Position, Secured Interest in the Property as the
Previous Mortgage Holder Pursuant to the Doctrine of Equitable Subrogation**

Even assuming, *arguendo*, that Plaintiff is correct that the mortgage is not effective
against him because he did not properly sign as a co-signing borrower, the mortgage in question
is defective, and he has no obligation under its terms, Defendants would still have a valid, first-
position security interest in the home through the valid, first-position security interest of First
Home Mortgage under the doctrine of equitable subrogation found in Illinois law. As Defendants
correctly argue, property rights in bankruptcy, including the perfection of liens, are governed by
Illinois law. *Matter of Chaseley's Foods, Inc.*, 726 F.2d 303 (7th Cir. 1983); *see also In re Hall*,
477 B.R. 74 (Bankr. N.D. Ill. 2012) and *In re The Medicine Shoppe*, 210 B.R. 310 (Bankr. N.D.
Ill. 1997) (applying principles of subrogation to validity of liens in bankruptcy).

Illinois recognizes two forms of subrogation, equitable subrogation and conventional
subrogation. *In re Pearce*, 236 B.R. 261, 264 (Bankr. S.D. Ill. 1999). For a party to assert a right
of equitable subrogation, they must satisfy four elements: "first, the debt or claim must have
been paid in full; second, the subrogee must have paid a debt for which a third party and not the
subrogee is primarily liable; third, the subrogor must possess a right which he could enforce
against a third party; and finally, the subrogee must not have acted as a mere volunteer in paying
the debt or claim." *Id.* at 265 (citing *American Nat'l Bank & Trust Co. v. Weyerhaeuser Co.*, 692
F.2d 455, 461-63 (7th Cir. 1983)). Conventional subrogation differs in that an express or implied
agreement, "takes away the character of a mere 'volunteer,' fulfilling that requirement for
subrogation." *Id.* (citing *Western United Dairy Co. v. Continental Mortgage Co.*, 170 N.E.2d
650, 651 (1960)).

Defendants satisfy each of the requirements for equitable subrogation. It is undisputed
that Defendants loaned $945,000.00 based on the note and mortgage and that those proceeds
were used to pay off the antecedent debt to the previous mortgage holder in full. Defendants, as
the subrogees, were not liable on the debt; Mrs. Mulkanoor had signed the 2003 note, and she
and Plaintiff granted First Home Mortgage a mortgage on the property to secure that
indebtedness. First Home Mortgage, the subrogor, clearly possessed a right which it could
enforce against Plaintiff and Mrs. Mulkanoor, both in the form of the 2003 note, signed by Mrs.

Mulkanoor, and the 2003 mortgage, signed by both Plaintiff and Mrs. Mulkanoor. Finally,
Defendants, as subrogees, did not act as mere volunteers, as they required Mrs. Mulkanoor to
sign the note and required both Plaintiff and Mrs. Mulkanoor to grant a mortgage on the
Property.

Plaintiff's counterargument that equitable affirmative defenses cannot be asserted against
a debtor-in-possession is unavailing. He relies on *In re Sandy Ridge Oil Co., Inc.*, 807 F.2d 1332
(7th Cir. 1986) for the proposition that all affirmative defenses, including waiver, estoppel,
laches, and equitable subordination are negated as against a debtor-in-possession. However,
Plaintiff's own citation to *In re Perrow*, 498 B.R. 560, 574 (Bankr. W.D. Va. 2013) contradicts
that assertion, as the Court in that case noted in its opinion that, "the Court must determine
whether any of Defendant's alleged equitable remedies, incorporated as affirmative defenses, are
sufficient to prevent Trustee, as a bona fide purchaser, from avoiding his interest in Debtor's real
property." Nowhere in *Sandy Ridge* does the Seventh Circuit explicitly hold that affirmative
defenses are "nugatory" against a debtor-in-possession as Plaintiff has suggested. As the *Perrow*
opinion noted, "[t]he trustee's rights as a bona fide purchaser under section 544(a) are limited to
those rights he or she would have under applicable state law; no more and no less." 498 B.R. at
571. Plaintiff's reference to *In re Badagliacca*, 403 B.R. 288 (Bankr. W.D.N.Y. 2009) as a
blanket bar to asserting equitable subordination against a Trustee is equally unavailing. As
Defendants point out, the Court in *In re Badagliacca* held that equitable subrogation was not
appropriate "on the facts and circumstances of this case," in part because the documents were
improperly drafted. *Id.* at 292-93; *see also In re Deuel*, 361 B.R. 509, 518 (B.A.P. 9th Cir. 2006).
As discussed at length above, the mortgage in this case is not improperly drafted pursuant to
Illinois law, and the facts and circumstances of this case indicate that a defense of equitable
subrogation is indeed appropriate. Since Defendants would be able to raise a defense of equitable
subordination against a *bona fide* purchaser in state court, they can also do so in bankruptcy.

Plaintiff also argues that even if the doctrine of equitable subordination applied,
Defendants would only step into the shoes of the previous lender, and therefore, Defendants'
loan could only be enforced to the amount of $880,000.00 (the amount of the previous loan) and
not the $945,000.00 value of the current loan. *Aames Capital Corp. v. Interstate Bank of Oak
Forest*, 315 Ill. App. 3d 700, 710 (2000). Once again, Plaintiff has incorrectly analyzed the case
law he has cited. As Defendants correctly point out, *Aames* is a case involving conventional

subrogation where an agreement existed between the parties. No such agreement exists, or is purported to exist here, and the doctrine of subrogation asserted is purely equitable. "Equitable subrogation is a creature of chancery that is utilized to prevent unjust enrichment." *Id.* at 706. While Defendants' lien would certainly be limited to the extent agreed upon were it asserting conventional subrogation, Plaintiff has cited no authority indicating that the value of Defendants' lien is limited to the amount of the previous mortgage under a theory of equitable subordination.

However, while it is clear that Defendants are equitably subrogated to second mortgage and have the authority to enforce the requisite rights against Plaintiff, it must be noted that Plaintiff did not sign the note on the 2003 mortgage, and thus has no continuing financial obligation to make payments. Defendants will be able to foreclose if that is the case; after all, Plaintiff has been making the loan payments after his wife's death under the assumption that he needed to do so in order to continue living on the Property. That much is correct because his interest in the Property and his wife's interest in the property were both subject to the mortgage. Unless someone were to make the required monthly loan payments, Defendants have every right to foreclose upon the property. But, because Plaintiff was not obligated on this note, or the note from the previous mortgage, he is not the one with the continuing obligation to pay. Defendants have acted accordingly throughout the adversary. They acknowledge that Plaintiff was never obligated under the note, they sent the loan statements only to the wife's estate, and they recorded the mortgage against Mrs. Mulkanoor because she was the defined borrower within the terms of the note and mortgage. Plaintiff's interest in the Property is subject to the mortgage and he cannot recover the money already paid, but he has no continuing obligation to pay under the doctrine of equitable subrogation because Defendants, as subrogee, can only enforce those terms that bound Plaintiff under the agreement with the previous mortgage holder.

Thus, under Defendants' theory of equitable subordination Plaintiff's Motion for Summary Judgment will be denied by separate order and judgement entered concurrently herewith, and Defendants' Motion for summary judgment will be granted.

## E. Plaintiff has Affirmed the Validity of the Mortgage by Making Payments and Continuing to Live in the Home and is Estopped from Arguing Otherwise

Defendants alternatively argue that setting aside all other legal or equitable defenses it has raised, by making 47 payments after his wife's death, Plaintiff has waived any right he had to argue the mortgage was void. Defendants assert that if a party relinquishes a known right by,

23

"conduct inconsistent with intent to enforce that right, he has waived it and may not thereafter seek judicial enforcement." *Saverslak v. Davis-Cleaver Produce, Co.*, 606 F.2d 208, 213 (7th Cir. 1979), *cert. denied*, 444 U.S. 1078 (1990). Moreover, Defendants assert that Plaintiff is estopped from denying the validity of the mortgage because he continued to enjoy the benefits of the mortgage, namely living in the Property, and thereby ratified his commitment to it. *United States Bank Nat'l Ass'n v. Cook*, 2009 U.S. Dist. LEXIS 318, at *15-17 (N.D. Ill. Jan. 6, 2009).

As discussed above, nothing in the relevant case law prevent Defendants from asserting affirmative defenses such as waiver or estoppel. Plaintiff's assertion that Defendants argue he has assumed his wife's obligation under the note and mortgage is clearly incorrect. Defendants have argued all along that Plaintiff himself has obligated his interest in the Property because of his signature on the mortgage and they have consistently acted with that position, recording the mortgage only against the wife and sending loan statements only to Mrs. Mulknaoor's estate. They continue to do so as they argue that Plaintiff has waived his rights. Defendants simply argue that because Plaintiff made voluntary payments with full knowledge of the fact that he did not sign the note, under the voluntary payment doctrine, he cannot recover any payments he made. *Brown v. SBC Communs., Inc.*, No. 05 CV 777-JPG, 2007 U.S. Dist. LEXIS 14490, at *26 (S.D. Ill. 2007) (*quoting Synfuel Techs. V. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

Under the voluntary payment doctrine, "money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered by the payor solely because," of mistake or illegality. *Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 847 (1995). "Absent fraud, coercion or mistake of fact, monies paid under a claim of right to payment but under a mistake of law are not recoverable." *Id.* at 847-48. Despite his knowledge that he had not signed the note and the fact that the loan statements reflected only the obligation of Mrs. Mulkanoor's estate to pay the monthly loan balance, Plaintiff believed that he had to continue paying to live in the Property. Pursuant to the voluntary payment doctrine, however, his mistaken belief of his legal obligations does not allow him to recover the payments that he made.

It is plainly apparent then that Plaintiff has waived his rights to assert that his interest in the Property was not mortgaged because he has acted inconsistently with that position for over four years. For that reason as well, Plaintiff's Motion for Summary Judgment will be denied by

separate order entered concurrently herewith and Defendants' Motion for Summary Judgment
will be granted.

**F. Plaintiff Cannot Recover the Payments Made to Ocwen**

Finally, no theory set forth by Plaintiff allows him to recover payments from Ocwen or
any other Defendant. First, as Defendants correctly point out, Plaintiff cannot recover from
Ocwen at all because Ocwen acted only as the mortgage servicer and remitted all payments to
Wells Fargo, who then remits the payments to Deutsche Bank. Plaintiff has provided no
evidence, other than his bare assertion, that Ocwen was unjustly enriched in any way because of
his payments after his wife's death. There is no evidence at all that Ocwen has retained any of
these payments.

Moreover, as discussed above, Plaintiff cannot recover any of the payments he has
already made under a theory of unjust enrichment, because pursuant to the voluntary payment
doctrine, legally mistaken but voluntary payments are not subject to recovery. *Prime Cable*, 276
Ill. App. 3d at 847-48. "[A] person who voluntarily pays another with full knowledge of the facts
will not be entitled to restitution." *Brown*, 2007 U.S. Dist. LEXIS 14490, at *26 (*quoting*
*Synfueld Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)).

Finally, Plaintiff asserted in his Response to Defendant's Motion for Summary Judgment
that he is entitled to recover the payments made to Defendants after his wife's death pursuant to
11 U.S.C. § 547. That section reads, in relevant part, that "[e]xcept as provided in subsections (c)
and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property --
(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the
debtor before such transfer was made . . ." 11 U.S.C. § 547(b).

As Defendants correctly point out, neither of these two provisions apply to the facts at
hand. First, Defendants have never been a creditor of Plaintiff and have acted consistently with
that position. They have never sent loan statements to Plaintiff directly, only to his wife's estate.
They did not record the mortgage against him because he was only a co-signing borrower under
the mortgage, and not a borrower under the terms of the note. And in all their filings, Defendants
have repeatedly acknowledged that Plaintiff is not liable on the current note. Defendants are
clearly not a creditor of Plaintiff. Second, because Defendants have repeatedly acknowledged
that Plaintiff is not liable on the note, there is no antecedent debt owed by the Plaintiff to
Defendants. Plaintiff's interest in the property is subject to the mortgage, yes. But he did not and

does not have any obligation to make payments to Defendants. If the payments on the note are not current, the Defendants do have the right to foreclose upon the Property. But, it is not Plaintiff that is explicitly required to make these payments, and should he choose to stop doing so, Defendants' only remedy will be to foreclose upon the mortgage. The payments that Plaintiff made, however, are clearly not preferential transfers within the meaning of 11 U.S.C. § 547(b), and he cannot recover those payments under said provision.

For that reason as well, the portion of Plaintiff's Motion for Summary Judgment seeking to recover the payments made to Defendants will be denied by separate order entered concurrently herewith and Defendants' Motion for Summary Judgment will be granted.

## CONCLUSION

Under Plaintiff's theory and version of the facts, he would end this adversary case with possession of the Property free and clear of any liens, recover all payments made to Defendants after his wife's death, and be able to continue to live in the Property without regard to any of the documents he signed at the time the note and mortgage were executed. However, Plaintiff did execute the 2003 mortgage on the Property to pay off the initial loan. That placed his interest in the Property under the obligation of the 2003 mortgage, even though only Mrs. Mulkanoor was financially obligated under the note. In the instant case, once again Mrs. Mulkanoor was obligated under both the note and mortgage, and Plaintiff disputes that his interest in the Property is subject to the mortgage. In both cases, however, the couple used a substantial amount of money loaned ($880,000.00 and $945,000.00 respectively) to pay off the previous mortgage on the Property. In addition to the merits of the many legal theories Defendants have proposed, Plaintiff has failed to explain why he believes that the Defendants in this case would loan $945,000.00 to Mrs. Mulkanoor for only her interest in the Property, when not two years earlier, the previous mortgage holder loaned $880,000.00 for the interests of both Mr and Mrs. Mulkanoor to be subjected to a mortgage. As this Court has answered above, that plainly cannot be the case, logically or legally.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment will be denied by separate order and judgment to be entered concurrently herewith. Defendants' Motion for Summary Judgment will be granted, declaring that the entirety of Plaintiff's interest in the Property is subject to the instant mortgage and that he cannot recover the payments already made

to Defendants. However, as this Court has noted above, Plaintiff is still not obligated on the note and has no continuing obligation to make such payments.

ENTER:

_____
Jack B. Schmetterer
United States Bankruptcy Judge

Dated this ____ day of October, 2018

OCT 2 8 2018

27